Nott, J.,
delivered the opinion of the court:
The claim in this case was transmitted under the Bowman Act on the 18th of April, 1884, by the Committee on War Claims of the House of Representatives.
The petition alleges it to be the claim of John Osborne for certain personal property furnished by or taken from him for the use of the Army. The evidence shows that the claim is for quartermaster and commissary stores and supplies taken from the plantation of John and William Osborne, near Alexandria, La., in May, 1864.
Concerning the title, the court has found that the plantation from which the property w as taken belon ged to John an d William Osborne and was worked by them in partnership, both before and during the war, and up to the time of seizure. The state of the partnership at the time of the seizure in May, 1864, has not been shown, either between the partners or between the firm and third persons. The property seized was in bulk on the plantation, and had not been divided between or set off to the respective partners.
Concerning the loyalty of the persons from whom the property was taken, the court has found that John Osborne was loyal to the United States and that the loyalty of William Osborne has not been established.
On these facts the counsel for the G-overnment seeks to dismiss the claim for want of jurisdiction, upon the ground that the loyalty of 1,1 the person who furnished such supplies or stores” has not been established as required by the fourth section of the Bowman Act.
If the case were a suit at law, unquestionably the position of the counsel for the Govérnment would be well taken. That partnership property is the property of the firm and not of the individual members thereof, and that the loyalty of a partnership can be proven only by proving the loyalty of every member are propositions too well established to be discussed. But in Congressional cases, which are cases transmitted by a committee of Congress under the Bowman Act for the ascertainment of facts, no legal question is involved, and they do not necessarily rest upon a legal right. The court, in compliance with the request of a committee, simply causes a claim to be investigated, and finds whatever facts either party may prove.
*420 The claim may be one unknown to law, or equity, or admiralty, and not founded upon any principle of legal or natural justice. The responsibility for the investigation of such claims by judicial means and for finding the facts established, and for reporting them to Congress, rests with the committee which transmitted the claim and requested the investigation.
This being the nature of the procedure, the fourth section of the act recognizes as the policy of the United States during the civil war thebeliigerent’s righttotake enemies’property in an enemy’s territory without compensation, coupled at the same time with thepolicy of the Government’s recognizing its own loyal adherents and ofmaking justcompensationfortheirproperty wher-evertaken. Accordingly,whilethestatuteallowsacommitteeof Congress to send any kind of claim here, however shadowy, fanciful, or unjust, it provides that the court shall not assume jurisdiction of this class of war claims until the petition shall aver and the evidence prove that the person from whom the property was taken “ was throughout that war loyal to the Government of the United States.”
This jurisdictional restriction, therefore, is strictly personal. It does not relate to the cause of action nor to the locus of the transaction, nor does the finding of loyalty affect or relate to the merits of the case. The law simply forbids the claimant to speak or the court to listen until it be primarily established that the person from whom the property was taken was an adherent and not an enemy of the United States. It can not be that a man shall not be heard in Congress through the medium of this court because somebody else was guilty of a disloyal act.
The persons from whom the property in this case was taken were John and William O-borne. The one has been found loyal and the other, to all intents and purposes, though not in form, has been found disloyal. In the earlier litigation of the civil war it was maintained on the part of the Government that ordinary transactions with disloyal persons constituted disloyalty, but that assumption was emphatically overthrown by the Supreme Court; and in many forms it was held that persons domiciled within the Confederate lines might carry on the ordinary transactions of life so long as those transactions did not constitute aid and comfort to the enemy. We may therefore assume it to be settled that John Osborne had a right *421 to continuo the ordinary business of a planter though his partner was disloyal; that is to say, the voluntary continuance of a prior partnership to carry on an innocent business did not per se make a man disloyal because his partner was disloyal.
The question then reverts whether the loyalty has been established of the person from whom the property which is the subject of the present claim was taken. That claim is not for the partnership property as such; it is simply for the share or interest therein of theloyal partner. The ownership and possession of that property were both in two men whose business relations as between themselves and the rest of the world constituted them partners. Neither had a several right in the property, but each had an equal and equitable interest therein. It can not be supposed that Congress intended in a proceeding authorized in the interest of equity and justice that the court should interpose a fiction of the lex mercatoria or a technicality of the common law. The legal title to partnership property is indeed lodged in the partnership, and a joinder of the partners is necessary to support an action at law; and still the partnership is made up of persons, and those persons are the only persons who in fact and in law can control the property or suffer from its loss. It is sufficient for the purposes of the statute that John Osborne owned and possessed, not the entire legal title to the property, nor yet a several right or interest therein, but that he did own and possess a valuable legal right, which would have enabled him to go into a court of equity and procure-a receiver for its protection and the ultimate ascertainment of his own share or equity in the property itself.
That share or equity the Government has virtually taken in taking the property. The court does not pass upon any question of legal or equitable right, either as against the other member of the firm or as against the assignee in bankruptcy of the claimant’s decedent. Those questions belong to Congress. All that the court does is to find the facts for Congress to consider; and all that it now decides is that in these Congressional cases a loyal partner possessed of a right or equity in property taken for the use of the Army or Navy during the civil war is entitled to have the facts found.
The order of the court is that the defendants’ motion for a rehearing on the preliminary question of loyalty be overruled.